THE MAYOR AND ALDERMEN OF JERSEY CITY ET AL., PLAINTIFFS IN ERROR, v. THE BOARD OF EQUALIZATION OF TAXES OF NEW JERSEY AND THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANTS IN ERROR.

Argued March 13, 1907—Decided June 17, 1907.

1. Section 6 of chapter 67 of the laws of 1901, entitled "An act to abolish the state board of taxation, and to create in lieu thereof a board for equalization, revision, review and enforcement of tax assessments" (*Pamph. L.* 1905, *p.* 126), authorizes the state board of equalization, "after due investigation," to increase the assessment made upon any property that has been assessed at less than its true value, and for this purpose, if necessary, to direct a reassessment of such property, to be made by an assessor or other taxing officer, or by some other person appointed by the board. *Held,* that the new assessment, whether made by the board, or by a taxing officer or some other person, is intended merely for the purpose of carrying into effect a determination previously reached by the board, after due investigation, that the property in question has been assessed at too low a valuation, and that the owner of the property is entitled to notice of the investigation.

2. Section 6 of chapter 67 of the laws of 1905 (*Pamph. L., p.* 126) authorizes the state board of equalization to establish rules, according to which the reassessment of property thereby authorized is to be made. *Held,* that a rule prescribing notice to the property owner after the making of the reassessment, and giving to him an opportunity to make objection to the new assessment, does not take the place of the notice to which the property owner is entitled before the state board determines the question whether the property in question has been assessed at too low a valuation.

On error to the Supreme Court.

For the plaintiffs in error, *J. Merritt Lane, George L. Record* and *Robert Carey.*

For the defendants in error, *George Holmes, William H. Corbin* and *William D. Edwards.*

The opinion of the court was delivered by

PITNEY, J.   This writ of error brings under review a judgment of the Supreme Court affirming a judgment of the state board of equalization of taxes, rendered January 15th, 1907, whereby it was ordered that the board of tax commissioners of Jersey City make a reassessment of all real estate assessed, or subject to assessment, in that city for the year 1906, according to certain rules prescribed by the state board, and included in its judgment.

The judgment of the state board followed upon the hearing of a petition or complaint presented to it by the Central Railroad Company of New Jersey on October 10th, 1906, wherein it was averred that the assessment of all property in Jersey City for the year 1906, as fixed by the local taxing officers and as confirmed by the county board of taxation, was unlawful, unequal and unjust in certain particulars.

Previous to the filing of this petition the Jersey City tax commissioners had made out their tax duplicates for the year, and these had been revised on September 18th by the county board of taxation, as provided by chapter 120 of the laws of 1906 (*Pamph. L., p.* 210), and on October 1st corrections were ordered to be made and the assessors ordered to enter the valuations in their duplicates.   On November 12th the county board of taxation commenced publication in the newspapers of the notice of the hearing of appeals.   On November 30th the county board caused the completed duplicates to be certified and delivered to the collector of Jersey City.

Of the hearing before the state board upon the petition above mentioned no citation or notice was given to property owners or others, except that the mayor and aldermen of Jersey City, the city board of tax commissioners and the Hudson county board of taxation were notified to appear, and did appear.   The Central Railroad Company also appeared. The state board proceeded to hear the evidence and arguments of the respective parties appearing.

The findings and judgment of the state board were as follows: "We do find that the real estate assessed by the board of tax commissioners of Jersey City for the year 1906 was

not properly listed as required by law, and was not assessed at its full and fair value as required by law, but was assessed at a rate lower than is consistent with the purpose of securing uniform and true valuation for the purpose of taxation in the larger part, and that great inequalities of valuations and lack of uniformity exist, so that there is not a uniform and true valuation of such property for the purpose of taxation. This board being unable, from the evidence before it, to find and determine the true value of such property, and being of the opinion that justice can be done only by ordering a re-assessment of such property according to the rules hereinafter established, it is therefore ordered, adjudged and decreed that the board of tax commissioners of Jersey City make a reassessment of all real estate assessed, or subject to assessment, by them for the year 1906 according to the rules which this board has herein established, which assessment, when made and affirmed by this board, shall be the assessment of such property for the year 1906."

This judgment was reviewed by the Supreme Court on *certiorari,* and was thereupon affirmed. The prosecutors in *certiorari* (now plaintiffs in error) include the municipal authorities and board of tax commissioners of the city, and various landowners whose interests would be affected by the proposed reassessment.

The principal question presented by the present writ of error, and the only one now requiring solution, is whether the state board of equalization, by virtue of section 6 of chapter 67 of the laws of 1905 (*Pamph. L., p.* 126), has power to make such an order, and if so, then whether it can exercise this power without notice to the owner of the property that is ordered to be reassessed.

The state board of equalization, established by the act of 1905 just referred to, is the successor of the former state board of taxation, established by an act of March 19th, 1891 (*Pamph. L., p.* 189; *Gen. Stat., p.* 3344), and the several supplements thereto. In the revised act of 1903 for the assessment and collection of taxes, the organization and powers of this board were provided for by sections 32, &c.

Section 35 (*Pamph. L.* 1903, *p.* 416) contains the same provisions (save for differences of verbiage not now material) that are contained in section 6 of the act of 1905.

In order to fairly appreciate the purpose and scope of the latter section it should, of course, be read in connection with the context.

The first two sections of the act of 1905 provide for the organization of the board, and confer upon it the power to compel the attendance of witnesses and the production of documents before it, the power to examine witnesses under oath, and to punish disobedience of its orders as for contempt. Section 3 provides for a complaint to be made to the board by any taxing district or county against any other taxing district or county that is by taxes contributing to the same common cause, and requires the board to cause an investigation of the complaint to be made, and to render assistance in arriving at a fair and equitable adjustment of values of property. If it shall appear that the value of any property in any taxing district is relatively less than the value of any other property contributing by taxation to a common burden, or that assessable property has been omitted from assessment, or that the assessment of any property is greater than the true value thereof, the board is to add to or reduce the assessment, but before any change is to be made in value, the assessors of the taxing district and the owners of the property are to be notified.

Section 4 imposes upon the board the duty of investigating the methods adopted by local assessors, and to annually report to the legislature such recommendations as may be necessary to prevent the evasion of just and equal taxation, and such changes as the board considers should be made in the laws, &c.

By section 5, where complaint is made to the state board on or before the 1st day of April following the assessment of property of any kind, the board is empowered to review and correct the action of the local assessors or other taxing officers, and of all boards of tax review, by reducing or increasing such assessment.

Section 6 reads as follows: "When the said board has rea-

son to believe, from information or otherwise, that any property, including the property of railroad and canal companies, has been assessed at a rate lower than is consistent with the purpose of securing uniform and true valuation of property for the purpose of taxation, the said board shall have the power, after due investigation, to increase the assessment made upon such property, and for this purpose, if necessary, may direct an assessor or other taxing officer to make a reassessment of such property according to the rules which the said board shall establish, and if such assessor or other taxing officer shall fail or refuse to comply with the order so given, the board shall have power to appoint some other person to make the new assessment under the direction of the board, and the assessment so made and affirmed by the board shall be, and be deemed to be, the assessment of such property for the year. The board may also assess and add to the tax list and duplicate any property omitted, and may correct misnomers or other errors in assessments on notice to parties concerned."

By section 7 it is made the duty of the board to meet from time to time to hear the appeals of taxpayers and taxing districts, and to determine such complaints, and revise and correct the apportionment of taxes, &c.

Section 8 provides for the hearing of a complaint made by the board of chosen freeholders of any county, or by the governing body of any taxing district, respecting the undervaluation or omission of the taxable property of any county, and the determination of the proper valuation by the board is to be deemed the true valuation for all purposes of the state comptroller, the state superintendent of public instruction and the state board of education.

By section 9 it is provided that the determination of any matter brought before such board shall be evidenced by a judgment duly signed by at least three of its members and filed with its clerk, copies whereof, duly certified by said clerk, shall be evidence in any cause or proceeding. And for failure of any person, officer or corporation to comply with

its judgment, the board is empowered to attach the delinquent for contempt and punish him accordingly.

It seems to us clear that the primary purpose of section 6 —indeed, its sole purpose, so far as is here pertinent—is to empower the state board of equalization to increase the valuation of any property that is found to have been assessed at too low a valuation. This is to be done "after due investigation," and by section 9 the determination of the matter is to be evidenced by a judgment, a copy of which is to be evidence in any cause or proceeding, and for non-compliance with which the delinquent is subject to attachment and punishment for contempt. These terms all import that the proceeding under section 6 is a *quasi* judicial proceeding, to be had upon notice to the parties concerned. The terms "any property" and "such property," as used in the section, import that its purpose is to secure an increase in the valuation of some specific parcel of property, and when the state board determines, after due investigation, that the property has been assessed at too low a rate, the board is to "increase the assessment made upon such property." Where the investigation shows the true value at which the property ought to be assessed, the manifest purpose is that the board shall by its judgment determine the true value. But the section provides for the case where the board may find that certain property has been assessed too low, but may be unable to determine with accuracy its true value, for it proceeds to say, "and for this purpose [that is, for the purpose of increasing the assessment], if necessary, may direct an assessor or other taxing officer to make a reassessment of such property according to the rules which the said board shall establish, and if such assessor or other taxing officer shall fail or refuse to comply with the order so given, the board shall have power to appoint some other person to make the new assessment under the direction of the board." Clearly this new assessment, whether made by a taxing officer or by another person, is intended merely for the purpose of carrying into effect the determination previously reached by the state board that the property in question has been assessed at too low a valuation.

In short, the design of the section, as we view it, is not so much to work a general reformation of tax valuations in a given district as to correct specific instances of error or abuse in the direction of undervaluation.

We find nothing in the section that, fairly construed, puts it out of line with the general scheme of our tax laws as it has existed for many years, that scheme being that while the original valuation by the assessor is made without judicial notice to the property owner, and without opportunity for him to have a voice in the matter (saving that the assessment is to be made by a public officer or officers at a specified time, and under circumstances of notoriety that afford to the taxpayer a reasonable opportunity to present his views to the assessor), yet that after the assessment is once made, no increase of the assessed valuation is to be made without notice to the property owner affected.

We do not find it necessary at this time to question that, under section 6 an investigation of the valuations of several or many distinct properties might be conducted at the same time, if such a combined investigation could be conducted with due regard to orderly procedure and without bearing oppressively upon the individual taxpayers concerned. But we think that, whether it is proposed to deal only with a single piece of property or with more than one, the section requires, as a matter of justice to the taxpayer affected, and as a necessary prerequisite to the "due investigation" that is prescribed, that the individual taxpayer shall receive notice. Such notice was not given in the present case.

Nor is the difficulty obviated by the fact that the judgment under review prescribes rules for the making of the new assessment, under which, after the completion and filing of the reassessment, notice is to be published in the newspapers, and the state board is to meet publicly to consider objections that may be presented in writing by property owners. As already pointed out, the act contemplates the making of a reassessment only for the purpose of effectuating a determination previously made by the state board that the property in question has been assessed too low. If the judgment under

review accords at all with the purpose of the act, it has determined this fundamental question against the property owner in his absence. We do not find in section 6 an intent that the rules which the state board is to establish, with respect to the mode of making the reassessment, are intended to subvert the sole purpose of the reassessment by giving to the property owner a subsequent hearing upon the very question that must have been determined against him before the reassessment is ordered, viz., that his property has been assessed at too low a valuation.

No doubt the findings of fact that are contained in the judgment of the state board of equalization in the present case indicate a great abuse, but it is to be noted that these findings were arrived at after an investigation conducted in the absence of any person representing the individual property owners. While the complainant, the Central Railroad Company, was given its opportunity for a full hearing before the state board, and while the city authorities and the county tax board were permitted to be heard, these parties are all adverse in interest to the individual taxpayer, for in legal contemplation the municipal authorities and taxing officers are as much interested in raising the valuations of the property of the individual taxpayers as is the railroad company.

It is little to the purpose to say that the evil resulting from the deliberate adoption of a system of valuing property in general at less than true value is so great and the number of property owners is so large that the requirement of individual notice to each would defeat what is claimed to be the beneficial purpose of the law. If the legislature had intended to prescribe a remedy for so general an abuse they would have chosen language more apt for the purpose. The legislative provision in question has been upon the statute book for several years, and until recently it was not attempted to be put to the use that was made of it in the present case.

It is earnestly argued by the learned counsel for the plaintiffs in error that if the section in question does not require notice to the individual property owners whose valuations are to be raised, the section is unconstitutional, and therefore

void. We find it unnecessary to determine this question. But certainly, if no notice to the property owner were required, the operation of the section would be very drastic. It would throw into confusion the financial affairs of taxing districts, and would result in serious practical detriment to vast numbers of property owners. The principle of natural justice that pervades our general system of tax laws indicates that notice to the individual taxpayer of such a review is proper, and we think a requirement of such notice is fairly imported by the language of section 6.

The judgment of the state board of equalization and the judgment of the Supreme Court should therefore be reversed.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, GRAY, DILL, J.J.   4.

*For reversal*—THE CHANCELLOR, GARRISON, HENDRICK-SON, PITNEY, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, J.J.   10.