CENTRAL R. CO. OF NEW JERSEY v. MAYOR AND ALDERMEN OF JERSEY CITY et al.

(District Court, D. New Jersey.  August 16, 1912.)

1. CONSTITUTIONAL LAW (§ 229*)—COURTS (§ 282*)—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

A systematic plan, persistently carried out by the assessing officers of a city, whereby they intentionally grossly undervalued the real estate of other owners, in violation of the Constitution and laws of the state, for the purpose of casting upon a railroad company which was a large owner of real property a greater burden of taxation than its lawful and just share, amounts to a denial of the equal protection of the laws, and gives a federal court jurisdiction of a suit by the railroad company for relief, regardless of the citizenship of the parties or the fact that a state court has concurrent jurisdiction.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 685; Dec. Dig. § 229;* Courts. Cent. Dig. §§ 820–824;  Dec. Dig. § 282.*

Jurisdiction in cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purch. Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7; Earnhart v. Switzler, 105 C. C. A. 262.]

2. MUNICIPAL CORPORATIONS (§ 979*)—TAXATION—INJUNCTION—ADEQUATE REMEDY AT LAW.

Where the statutory tribunal created for the equalization of taxes can exercise its power to correct discriminations in values only after notice to the owners of the alleged undervalued properties to be affected, the remedy of the owner of the property alleged to be discriminated against, by an appeal to such tribunal to increase the assessments of such other properties, running into the 100,000's, is inadequate, and does not exclude the jurisdiction of equity.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2120–2123;  Dec. Dig. § 979.*]

3. MUNICIPAL CORPORATIONS (§ 974*)—JUDGMENT AS BAR—MATTERS CONCLUDED.

Where, on appeal by a railroad company to the State Board of Equalization from an assessment of its property by the taxing officers of a city on the ground that it was excessive and discriminatory, the only question determined was whether the company's assessment was excessive, the board being without jurisdiction to determine whether other property was undervalued because the owners were not parties to the proceeding, its judgment did not render the question of discrimination res judicata.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2083–2086;  Dec. Dig. § 974.*]

4. EQUITY (§ 71*)—LACHES—GROUNDS AND ESSENTIALS OF BAR.

Mere lapse of time before bringing suit will not constitute laches which will bar relief in equity, but there must be some change of circumstances

———————————————

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prejudicial to the defendant which will render the granting of the relief inequitable.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 204–211; Dec. Dig. § 71.*]

5. MUNICIPAL CORPORATIONS (§ 979*)—LACHES—DELAY IN BRINGING SUIT.

A delay of several years by a railroad company before commencing a suit against a city for unlawful discrimination in the taxing of its property did not constitute laches which barred it from relief, where, during the time, it was litigating the right of the city to tax its property at all, and, pending such litigation, the city did not attempt to enforce collection of the taxes.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2120–2123; Dec. Dig. § 979.*]

6. EQUITY (§ 39*)—JURISDICTION—RETENTION TO GRANT COMPLETE RELIEF.

When jurisdiction in equity has properly attached, it extends to the whole case and to all the issues involved, and the court will proceed to determine any other equities existing between the parties connected with the main subject of the suit and grant all relief requisite to the entire adjustment of such subject, provided it is authorized by the pleadings.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 104–114; Dec. Dig. § 39.*]

In Equity. Suit by the Central Railroad Company of New Jersey against the Mayor and Aldermen of Jersey City and others. On final hearing. Decree for complainant.

George Holmes and R. V. Lindabury, for complainant.
Warren Dixon, for defendants.

RELLSTAB, District Judge. In view of the absence of any evidence on the part of the defendants, either in contradiction of the testimony offered by the complainant, or to support their unverified answer, a more extended reference to the pleadings than is usual is necessary for the proper understanding of this case. Complainant, a railroad corporation of the state of New Jersey, in its bill of complaint filed December 21, 1908, charges, in substance: That in the year 1899 and the subsequent years to and including 1906 the defendant, the mayor and aldermen of Jersey City, a municipal corporation of said state, by its taxing officers, intentionally and systematically undervalued for the purposes of taxation the property of individuals and others in said city, except in a few isolated instances of properties owned by railroad companies and other corporations immediately adjoining the large railroad yards in said city, at rates varying from 45 per cent. to 70 per cent. of the true value of the properties assessed, and at the same time overvalued that part of the property of complainant known as "third-class railroad property"—i. e., held for railroad purposes, but not yet so applied—whereby its said lands were taxed largely in excess of the assessment against the property of others contributing to the same common burden of taxation. That the description of lands, the

valuations thereof for taxation and the taxes assessed against the same as aforesaid are as follows:

| Year. | Block. | Lot. | Location. | | | Valuation. | Total Amount of Tax. |
|---|---|---|---|---|---|---|---|
| 1899 | 2154 | 22 | Communipaw | Avenue | | $1,603,000.00 | $45,525.20 |
| 1900 | " | " | " | " | | 1,603,000.00 | 45,204.60 |
| 1901 | " | " | " | " | | 1,603,000.00 | 44,884.00 |
| 1902 | " | " | " | " | | 1,603,000.00 | 44,563.40 |
| 1903 | " | " | " | " | | 1,603,000.00 | 44,082.50 |
| 1904 | " | " | " | " | | 1,603,000.00 | 43,922.20 |
| 1905 | " | " | " | " | | 1,803,000.00 | 49,221.90 |
| 1906 | " | " | " | " | | 2,390,000.00 | 59,511.00 |
| 1907 | " | " | " | " | | 2,937,000.00 | 60,189.60 |
| 1899 | 1497 | 1 | New York | Bay | | 771,000.00 | 21,896.40 |
| 1900 | " | " | " | " | " | 771,000.00 | 21,742.20 |
| 1901 | " | " | " | " | " | 771,000.00 | 21,588.00 |
| 1902 | " | " | " | " | " | 500,000.00 | 13,900.00 |
| 1903 | " | " | " | " | " | 500,000.00 | 13,750.00 |
| 1904 | " | " | " | " | " | 500,000.00 | 13,700.00 |
| 1905 | " | " | " | " | " | 550,000.00 | 15,015.00 |
| 1906 | " | " | " | " | " | 1,125,000.00 | 28,012.50 |
| 1907 | " | " | " | " | " | 1,450,000.00 | 28,315.00 |

That from the assessment for the year 1899 complainant appealed to the State Board of Taxation of New Jersey, which board had power to review and ascertain the true value of all property assessed for taxation throughout the state, except that levied against property used for railroad purposes by the State Board of Assessors of said state, and that said board after a hearing confirmed the valuation for such year. That on the application of complainant reviews of the legality of such taxes were successively made by the Supreme Court of the state of New Jersey and the Supreme Court of the United States, on the ground, among others, that said lands were not within the jurisdiction of Jersey City, nor within the jurisdiction of the sovereignty of New Jersey for the purposes of taxation. That in the year 1908 the United States Supreme Court decided that said lands were within the jurisdiction of said state and its taxing authorities for the purpose of taxation, the mandate of said court bearing date the 1st day of June, 1908. That the complainant in each of the years 1900, 1901, and 1902 appealed to said State Board from the said assessments for said years, respectively, on said lot 22, and that said board confirmed said assessments. That in each of the years 1906 and 1907 complainant appealed from the said assessments made on said lot for said years, respectively, to the State Board of Equalization of Taxes of New Jersey, said board having superseded the State Board of Taxation with all its said powers, and that said board, after taking evidence, determined the true value to be $1,603,000 and $1,743,000 for said years respectively. That in each of the years 1900 and 1901 complainant appealed to said State Board of Taxation from said assessments for said years, respectively, on said lot 1, and that said board reduced said assessments to $500,000, and that said lot was assessed that sum in the years 1902, 1903, and 1904. That in each of the years 1906 and 1907 complainant appealed from said assessments made on said lot for

said years to said State Board of Equalization of Taxes, who deter-
mined the true value of said lot for each of said years to be the sum
of $747,820, and reduced the said assessments to said sum. That
these two lots, 22 and 1, consist partly of upland and partly of land
under the waters of the Hudson River, the greater part being still
under water. That lot 22 comprises 448 acres of which 6 acres are
occupied and used for railroad purposes, and that during all of said
years such 6 acres were taxed by the state of New Jersey, through
its State Board of Assessors, which has the exclusive power to tax
such lands. That such taxes, so assessed by the state authorities,
have been paid, and that under the laws of said state the taxes levied
by Jersey City thereon are unlawful and void. That pending the
review in the state and United States courts, respectively, of the
right of Jersey City to tax said lands, no attempt was made by said
city or its officers to enforce the collection of any of said taxes, and
that from such determination in the United States Supreme Court
until October 27, 1908, complainant was negotiating with certain of
the officers of said city to get a fair settlement of all of said taxes,
on which date such negotiations were broken off. That complain-
ant has exhausted all the remedies afforded by the laws of the state
of New Jersey in respect to the correction of said valuations and
assessments and to prevent the enforcement thereof. That by the
statutes of such state, as "interpreted by the decisions of its courts,
the only remedy afforded to a taxpayer where property is assessed
at a larger rate than other property in the taxing district, but not
in excess of its true value, is to apply to said State Board of Taxa-
tion, or to the said Board of Equalization in each year, to increase
the assessments upon property undervalued for the purposes of
taxation, and that such increase can only be made after due in-
vestigation and upon notice to the owners of each parcel of property
so underassessed. That the number of parcels of real estate in the
city of Jersey City so underassessed during the years 1899 to 1906,
inclusive, amounted to at least 160,000 separate parcels owned by at
least 60,000 separate owners; and your orator charges and insists
that not only would it have been impossible within the time af-
forded by law to have given notice to each owner and proved the
underassessment of each parcel upon a hearing, but that the cost of
such a proceeding would have been absolutely prohibitive, and that
such remedy afforded no remedy at all." That it has no adequate
remedy at law to correct said discriminations, or to prevent the en-
forcement thereof, or to recover back the taxes so assessed in case
it pays them in order to prevent the sale of its said property, as no
legislative remedy has been provided to meet such cases. That, if
a remedy to recover back any part of the taxes so paid exists, "it
would involve a multiplicity of suits, because part of the said taxes
when collected are paid over by the city authorities to the state, the
county collector of Hudson county in said state, and the other part
is retained by the aforesaid city." That the true value of said lots 22
and 1 in each of said years did not exceed $1,603,000 and $500,000,
respectively, and that the total taxes on such sums at the rate
charged by the city during said years amounts to $495,635.04. That,

to place complainant on an equality with said owners of other property in said city, it should pay but $297,381.02, that being 60 per cent. of the last-stated sum. That said sum of $297,381.02 was tendered to the city collector (the other named defendant) on December 19, 1908, in payment of said taxes, and that such payment was refused. That the said city collector has advertised said property for sale to enforce the collection of such taxes, and that, if such sale be made, complainant will be deprived of its said property without due process of law, in violation, not only of the Constitution of the state of New Jersey requiring that property be assessed for taxes by uniform rules and according to the true value, but also of the fourteenth amendment of the Constitution of the United States of America.

The complainant, after tendering itself ready to pay such sum for taxes as the court shall direct either to Jersey City or into court, prays that this court determine the amount of taxes which the complainant should pay for said years, that the excess of such taxes be canceled, and that the defendants be restrained from collecting by the sale of said lands or otherwise any taxes in excess of the sum that shall be finally decreed to be due to such municipality. It also contains the usual prayer for general relief.

The answer, unverified, so far as is pertinent to the questions raised on this record (the defendants, as stated, not having offered any evidence either in contradiction of complainant's case as made by the pleadings and its proofs), in substance, denies that the suit is of a civil nature in equity, arising under the Constitution of the United States; that the taxes assessed by Jersey City on the 6 acres of lot 22 are unlawful and void; that complainant has no adequate remedy at law for any of its alleged grievances; that complainant's property is to be taken without due process of law; and that it is denied the equal protection of the law in violation of the fourteenth amendment of the Constitution of the United States. It asserts that the United States Courts have no jurisdiction in the subject-matter of the suit; that complainant has a full and adequate remedy at law; that the New Jersey Court of Chancery affords the same relief as this court where the remedy at law is not adequate; that, if the facts set out in the bill constitute any ground of action, it is cognizable by the courts of New Jersey; that complainant is not entitled to any relief in the courts of equity of the United States; "that the validity of the imposition of the taxes stated in the bill of complaint has been affirmed by the Supreme Court and the Court of Errors and Appeals of New Jersey and by the Supreme Court of the United States in a controversy between the same parties involving the same subject-matter; and that the matters stated in said bill of complaint are res judicata, and that the said complainant is guilty of such laches as to bar it of any relief under said bill."

The gravamen of the bill of complaint is the intentional and systematic discrimination against complainant's properties in the matter of taxation by overvaluing them and undervaluing the other properties comprised in the same class. The complainant concedes that, so far

as the valuations of its own properties are concerned, it is concluded by the judgments of the state tribunals. The results of the several appeals made to such tribunals are shown by the following table:

| Year. | Block. | Lot. | Original Assessment. | Reduced to. |
|---|---|---|---|---|
| 1899 | 2154 | 22 | $1,603,000 | affirmed. |
| " | 1497 | 1 | 771.000 | affirmed. |
| 1900 | 2154 | 22 | 1,603,000 | affirmed. |
| " | 1497 | 1 | 771,000 | $500,000 |
| 1901 | 2154 | 22 | 1,603,000 | affirmed. |
| " | 1497 | 1 | 771,000 | $500,000 |
| 1902 | 2154 | 22 | 1,603,000 | affirmed. |
| " | 1497 | 1 | 500,000 | affirmed. |
| 1903 | 2154 | 22 | 1,603,000 | affirmed. |
| " | 1497 | 1 | 500,000 | affirmed. |
| 1906 | 2154 | 22 | 2,390,000 | $1,603,000 |
| " | 1497 | 1 | 1,125.000 | $ 747,820 |
| 1907 | 2154 | 22 | 3,720,000 | $1,743,000 |
| " | 1497 | 1 | 1,750,000 | $ 747,820 |

[1] *As to the undervaluation of other properties.* The manner of defendants' denial of complainant's charge of designed and systematic undervaluation is significant. While they in their other denials of complainant's charges unequivocally contradict them and directly put them in issue, they, in this behalf, merely deny an intentional and systematic discrimination in the method of assessing the properties of complainant and those of other owners in said city. Such a manner of taking issue is not a denial of the charge of intentional and systematic undervaluation of the properties other than complainant's, but only that the method employed was discriminatory, leaving it to be inferred that such undervaluation was general, and hence is an admission of a designed and continued discrimination between complainant's and such other properties. Atchison, T. & S. F. Co. v. Sullivan, 173 Fed. 456, 97 C. C. A. 1. The failure of defendants to introduce any opposing evidence to that offered by complainant avoids the necessity of any extended summary of that offered. As to it, it is sufficient to say that it clearly established a well-defined, a systematic, plan persistently carried out by the city assessors, whereby they intentionally grossly underassessed the property of others within the city, and cast upon complainant a greater burden of taxation than its lawful and just share. This practice was in disregard of the constitutional mandate that "property shall be assessed for taxes under general laws and by uniform rules according to its true value" (N. J. Const. art. 4, § 7, par. 12), and the general laws framed to effect such tax laws (3 Gen. Stat. N. J. 1895, pp. 3282, 3344, and P. L. 1903, p. 394), and is such a denial of the equal protection of the laws guaranteed by the fourteenth amendment to the Constitution of the United States as to require this court to take jurisdiction and relieve the complainant from the unjust part of the proposed tax, regardless of the absence of diverse citizenship, or that a state court of equity has jurisdiction in the premises (Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; Cummings v. National Bank, 101 U. S. 153, 158, 25 L. Ed. 903; Pittsburgh, Cinn., Ch. & St. L. R. Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; First National Bank of Toledo v. Treas.

Lucas Co. [C. C.] 25 Fed. 749; Taylor v. Louisville & N. R. Co., 88 Fed. 350, 372, 31 C. C. A. 537; Louisville Trust Co. v. Stone, 107 Fed. 305, 46 C. C. A. 299; Chicago Traction Co. v. Raymond [C. C.] 114 Fed. 557, affirmed in Raymond v. Chicago Traction Co., 207 U. S. 20, 37, 38, 28 Sup. Ct. 14, 52 L. Ed. 90; Atchison, T. & S. F. Co. v. Sullivan, supra), unless, as contended by defendant, an adequate remedy at law exists for the correction of such grievance or the subject-matters thereof are res judicata, or the complainant is barred from maintaining its suit by laches.

[2] *As to adequate remedy at law.* The State Board of Taxation, established in 1891 (N. J. P. L. 1891, p. 189), and its successor, the State Board for the Equalization of Taxes, established in 1905 (N. J. P. L. 1905, p. 123), were the statutory tribunals created by the state for the equalizing, revising, and enforcing of taxes. These were appealed to by the complainant to correct said discriminations. The powers of these boards to reduce individual assessments to true value when they exceed the same is undoubted, and was so decided (Central R. R. v. Newark, 74 N. J. Law, 1, 65 Atl. 244), and complainant is bound by this adjudication as to the assessments levied upon its properties. In Jersey City v. Board of Equalization of Taxes, 74 N. J. Law, 753, 67 Atl. 38, the Court of Errors and Appeals declined to express an opinion whether this board was authorized to investigate the value of several or many distinct properties at one time. It held, however, that, whether it dealt with only a single piece of property or with more than one, such power could be exercised only upon notice to each individual taxpayer affected by such proceeding. With this construction placed upon the statute of 1905 by the highest court of the state, and which, in matters of this kind, is binding upon this court (Forsyth v. Hammond, 166 U. S. 506, 519, 17 Sup. Ct. 665, 41 L. Ed. 1095; Adelbert College, etc., v. Wabash R. Co., 171 Fed. 805, 96 C. C. A. 465, 17 Ann. Cas. 1204), how can it be said that the remedy at law is an adequate one? When the jurisdiction of a court of equity is disputed on the grounds that a remedy at law exists to justify the court in declining jurisdiction, it must appear that such remedy is neither doubtful nor obscure, and also that it will correct the whole mischief and secure to the injured party his whole right in a perfect manner. 1 Story, Eq. Jur. § 33. The remedy at law must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity. Boyce v. Grundy, 28 U. S. (3 Pet.) 210, 7 L. Ed. 655; Bank of Ky. v. Stone (C. C.) 88 Fed. 383; Atchison, T. & S. F. Ry. Co. v. Sullivan, supra.

The highest court of the state having in effect questioned the power of this statutory tribunal to correct the abuses of undervaluation when carried on on as large a scale as is proven in this case, to turn the complainant out of this court, and require it to seek redress before such tribunal would be to compel it to (in the language of the complainant's brief) "not only assume the risk of finding at the end of the litigation that the Board of Equalization had no power to relieve its difficulty, but would be obliged to give notice to each of the individual property owners whose assessment was too low. As there are 165,-

625 parcels of real estate in Jersey City, and there were in 1906, according to the census of that year, 248,458 inhabitants of the city among whom the same are distributed, it is manifest that it would be practically impossible for any taxpayer to give the notice and conform to the practice held essential by the court of errors." Whatever may be said of the character of the remedy thus afforded by an appeal to the State Board of Equalization of Taxes, it is certainly not an adequate one. Furthermore, as charged by the bill of complaint and admitted by the answer, the taxes, when collected, are in part retained by Jersey City for its municipal purposes, and in part paid over to the county for county purposes, and in part paid to the state for state purposes. Assuming that suits for the recovery of such taxes, if paid under protest, would lie against the state, city, and county, a multiplicity of suits would be necessary, a recognized head of equity jurisprudence. The right to institute suits against such municipalities has not been shown, and, as no statute authorizing them exists, the maintenance of such suits is doubtful. Moreover, it is fundamental that the state cannot be sued without its consent, and, as to the part of the taxes received by it, no remedy at all exists.

[3] *Is the subject-matter under review res judicata?* The appeals made by the complainant to the state boards raised the matter of complainant's property being assessed relatively higher than the other properties. On none of these appeals except that involving the taxes for the year 1906 did the state boards enter upon the review and determination of the charge of undervaluing such other properties; their judgments as to such other years dealing only with the charge of overvaluation of complainant's properties. Concerning the taxes of 1906, however, the board did examine into such charge of undervaluation, and determined that such charge was well founded, and ordered the tax commissioners of Jersey City to make a reassessment of all the real estate assessed by them for the year 1906. This judgment on review by the state courts was reversed by the Court of Errors and Appeals in Jersey City v. Board of Equalization of Taxes, supra, in which case the court, without deciding that the board had power to enforce a reassessment where the alleged undervaluation was general, held that the board had not obtained jurisdiction over the necessary parties to such a proceeding.

It is essential to res judicata that the judgment pleaded as a bar should be rendered by a court not only competent to try the question, but one that obtained jurisdiction over the subject-matter or point in controversy, and in the presence of the necessary parties, investigated and determined the controversy on its merits. 2 Black on Judgments, §§ 504, 693, 713, 719; St. Romes v. Cotton Press Co., 127 U. S. 614, 8 Sup. Ct. 1335, 32 L. Ed. 289. In none of the appeals before the state boards were the parties necessary for conclusive determination of the question of undervaluation present. The only judgment rendered by such boards on that question was in complainant's favor, but this was held ineffective, and therefore inconclusive because of the lack of necessary parties. This infirmity applies to all the appeals; and, as the necessary par-

ties to permit of a binding investigation and determination of the question of undervaluation were not present in any of such appeals, no adjudication had in such statutory tribunals or in the state and United States courts, so far as that question is concerned, is res judicata.

[4] *As to laches.* To constitute laches as a bar to relief in equity, something more than mere lapse of time is necessary. There must be some change of circumstances from the time the suit might have been brought rendering it inequitable to grant the relief sought. Where the defendant has not been prejudiced, and there is a reasonable excuse for the delay, the suit is not barred. Delay pending other proceedings has frequently been held excusable, not only where the termination of such proceedings was necessary for the ascertainment of facts involved in the later suit, but also where the former suit had a similar object, but proved unavailing. 16 Cyc. 152, 162, 167, 175; O'Brien v. Wheelock, 184 U. S. 450, 493, 22 Sup. Ct. 354, 46 L. Ed. 636; Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; Old Colony Trust Co. v. Dubuque L. & T. Co. (C. C.) 89 Fed. 794.

[5] Complainant from 1899 to 1908 was litigating in the state courts and the United States Supreme Court the right of the city to enforce any tax upon the property in question, and during the pendency of such suit it was not chargeable with laches for not following up its protests to the taxing authorities of the city for its discrimination in values and the appeals to the state board for redress against such discrimination, with equity proceedings to prevent the enforcement of such discrimination. The city was at all times in a position to invoke the legal machinery to enforce the collection of any of such taxes assessed after 1899, and thus force either the payment thereof or an appeal to the courts restraining such collection pending the judicial review of the very right to impose a tax. The refraining by the city authorities during these years to enforce the collection of the unpaid taxes by sale of the properties, a remedy given by the state statutes, reflects the normal attitude towards the subject of such a taxation, viz., awaiting determination of the court of last resort of the right to impose such taxes before taking any further action. In my judgment, neither the failure of the complainant nor of the defendants to take additional steps pending such litigation savors of negligence, an essential element in laches. Nor does the time that elapsed between the issuing of the mandate out of the United States Supreme Court formally ending the litigation concerning the right to tax at all, and the filing of the bill in this cause (about seven months) in view of the then pending negotiations between the complainant and the city authorities to effect an adjustment of such taxes, constitute laches.

Intentional and systematic discrimination in the assessments as well as the court's power to grant, and the complainant's right to obtain relief having been conclusively established, it only remains to determine the character of complainant's relief and upon what

terms it should be granted. The percentage of valuations and assessments imposed upon the other properties below true value varied. The evidence satisfies me, however, that the general purpose of the city assessors in valuing such properties was to assess at seventy per cent. of the true value, though much of it was assessed below that figure; and the court will accept that percentage as the basis of valuation in determining the amount of taxes that should be paid. The city assessors having included in lot 22 six acres of land actually used for railroad purposes, and which were lawfully taxed by the state of New Jersey through the State Board of Assessors as first or second class railroad property, under exclusive legislative authority (4 Comp. Stat. N. J. p. 5260, §§ 445, 447), the assessed value of such six acres must be deducted from the total valuation of such lot.

[6] This deduction should be made in this suit, notwithstanding that such erroneous taxation does not present a federal question, and that the injustice arising from such double taxation is remediable at law, upon the well-recognized principle controlling in matters cognizable in equity courts, that, when jurisdiction has properly attached, it extends to the whole case and to all the issues involved, and that the court will proceed to determine any other equities existing between the parties connected with the main subject of the suit, and grant all relief requisite to the entire adjustment of such subject, provided it be authorized by the pleadings. 16 Cyc. 107; Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554, 33 L. Ed. 909; Vreeland v. Vreeland, 49 N. J. Eq. 322, 24 Atl. 551.

The defendant Jersey City, however, having been successful in the litigation over the basic right to tax such properties, and having been deprived of the moneys represented by the taxes that it could lawfully impose thereon, and the complainant having had the use of such moneys pending such litigation, it is but equitable that the complainant should, in addition to the principal of such tax, pay interest thereon at the rate of 6 per centum per annum. It follows that, as the amounts paid by complainant on the granting of the rule to show cause and the allowance of the preliminary injunction herein do not equal the principal of the tax payable on such seventy per cent. basis of valuation, it is required to pay such difference and also interest as aforesaid on the whole amount of taxes based on such reduced valuation from the dates that taxes imposed upon similar properties in Jersey City were due and demandable in such years respectively, less interest at the same rate calculated on the sums already paid on account of such taxes from the respective dates of such payment.

Upon the payment of such taxes, principal, and interest, the remainder or excess of the taxes assessed by Jersey City shall be canceled of record upon the tax duplicates and other books of such city, and the defendants perpetually enjoined from collecting or attempting to collect any of such excess taxes. If the parties are unable to agree on the amount to be paid in conformity with the

determination here reached, either may on five days' notice apply for a reference to ascertain such amount.

The complainant may enter a decree in accordance with this opinion, with costs to be taxed.