MAYOR AND ALDERMEN OF JERSEY CITY et al. v. CENTRAL R. CO. OF NEW JERSEY.

(Circuit Court of Appeals, Third Circuit. March 25, 1914.)

No. 1782.

1. MUNICIPAL CORPORATIONS (§ 974*)—TAXATION—REVIEW—CONCLUSIVENESS.

Where a state board of taxation and the board of equalization of taxes had authority only to reduce an assessment to the true value of the property, and had no authority to raise the assessment of property undervalued by the taxing officers on the complaint of a party whose property was overvalued, their decisions on appeals by such party for the purpose of having its assessment reduced were not res judicata in a suit to enjoin enforcement of the tax on the ground that the assessment of its property at its full value, while other property was systematically undervalued, was an unjust discrimination.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2083–2086; Dec. Dig. § 974.*]

2. MUNICIPAL CORPORATIONS (§ 979*) — TAXATION — INJUNCTION — ADEQUATE REMEDY.

Where the state boards having authority to review assessments for taxation and the common-law courts could only reduce assessments to the true value, and could not raise other assessments systematically made at 70 per cent. or less of the true value, without making the 165,000 or more owners parties, and the taxes, if paid under protest, could be recovered only by suit against the state, city, and county to whom they would have been distributed, there was no adequate remedy at law against the unjust discrimination involved in assessing complainant's property at its full value, preventing relief by injunction.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2120–2123; Dec. Dig. § 979.*]

3. MUNICIPAL CORPORATIONS (§ 979*)—TAXATION—INJUNCTION—LACHES.

Where in 1899 land was assessed for taxation, and a writ of certiorari to review the assessment allowed by the New Jersey Supreme Court, from which court the case was taken by writs of error to the Court of Errors and Appeals and United States Supreme Court, which in 1908 decided against the owner's contention that the property was not taxable, and during the pendency of the litigation, though taxes were annually assessed, nothing was done toward their collection or enforcement, a suit brought seven months after the issuing of the mandate of the United

States Supreme Court to enjoin the sale of the land for such taxes, on the ground that the land was assessed at its full value, while other property was systematically assessed at 70 per cent. or less of its value, was not barred by laches; negotiations for the adjustment of the taxes having been pending during the seven months.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2120–2123; Dec. Dig. § 979.*]

4. COURTS (§ 282*)—UNITED STATES COURTS—JURISDICTION—CONSTITUTIONAL QUESTIONS.

A United States District Court had jurisdiction of a suit to enjoin a sale of land for taxes on the ground that the land was assessed at its full value, while other property was assessed at 70 per cent. or less of its value, in violation of Const. U. S. Amend. 14..

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dig. § 282.*]

5. CONSTITUTIONAL LAW (§§ 213, 254*)—DUE PROCESS—EQUAL PROTECTION OF THE LAWS.

The inhibition of Const. U. S. Amend. 14, against depriving a person of life, liberty, or property without due process of law, or denying the equal protection of the laws, applies not only to legislative enactments, but to such conduct of the state's ministerial agents as accomplishes the purposes denounced.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 735; Dec. Dig. §§ 213, 254.*]

Appeal from the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Bill by the Central Railroad Company of New Jersey against the Mayor and Aldermen of Jersey City and another. From a decree in favor of complainant (199 Fed. 237), defendants appeal. Affirmed.

John Milton, Corp. Counsel, of Jersey City, N. J., for appellants.

R. V. Lindabury, of Newark, N. J., and George Holmes, of Jersey City, N. J., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The complainant below, a railroad corporation of the state of New Jersey, filed its bill against the defendant below, a municipal corporation of the said state, to restrain the collection of taxes levied by the latter on assessments of complainant's property, alleged to have been so unfairly and inequitably made as to violate the provisions of the fourteenth amendment of the Constitution of the United States. The defendant below filed an answer to complainant's bill. At the hearing, evidence was taken in support of the allegations of the bill, but no proofs were taken by the defendant. Consequently, there is little or no dispute as to the facts of the case, which may be summarized (largely from the brief of the appellee) as follows:

The complainant is the owner of two tracts of land, consisting partly of upland and partly of land under the waters of the Hudson river. These tracts are what is known as third-class railroad property—that is, property held for railroad uses but not yet so applied—and they

are therefore taxable locally (Comp. Stat. N. J. 1910, vol. 4, p. 5260, § 445). Complainant acquired these tracts by purchasing a strip of *ripa* from the owners, and then obtaining a grant from the state for the lands under water in front thereof. These two tracts are known, respectively as lot 22, block 2154, and lot 1, block 1497, and were claimed by the taxing authorities of Jersey City to be within its territorial limits for the purpose of taxation. The greater part of these tracts consists of lands still under water, although a part of lot 22, block 2154, has actually been reclaimed by the complainant and is used by it in part for railroad purposes, there being about six acres occupied and used by its Phillips Street Branch Railroad.

The complainant is a railroad corporation created by special charter granted by the state of New Jersey and is engaged in local and interstate commerce on an extensive scale. In 1899, the city of Jersey City assessed these lands for taxation. The complainant, being advised that the lands, at least so far as they lay under the waters of the Hudson river, were not within the jurisdiction of the city of Jersey City or of the state of New Jersey, applied to the New Jersey Supreme Court for a writ of certiorari to review said assessments. The writ was allowed. The New Jersey Supreme Court (70 N. J. Law, 81, 56 Atl. 239) sustained the authority of the city to tax this property. A writ of error was sued out from the New Jersey Court of Errors and Appeals to review this judgment. The judgment of the State Supreme Court was affirmed upon this writ of error. 72 N. J. Law, 311, 61 Atl. 1118. A writ of error was then sued out of the United States Supreme Court to review the judgment of the New Jersey Court of Errors and Appeals. The United States Supreme Court in turn affirmed the judgment of the state Court of Appeals. 209 U. S. 473, 28 Sup. Ct. 592, 52 L. Ed. 896. This decision was rendered in June, 1908, and a mandate issued, which was filed with the clerk of the New Jersey Court of Errors and Appeals on the 9th day of June, 1908, but no judgment has been entered thereon in either of the state courts.

In the years subsequent to 1899, the city, persisting in its claim, annually assessed taxes against these properties. The complainant, in the years 1900 and 1901, appealed to the State Board of Taxation and that board found the true value of lot 1, block 1497, for each of said years, to be $500,000. The city acquiesced in this finding, and for the years 1902, 1903 and 1904 the local assessors assessed the property at said sum. In the year 1905, they assessed it at $550,000. From this assessment the complainant filed an appeal, but the board failed to take action thereon. In the year 1906, the local assessors assessed this lot at $1,125,000. The complainant appealed to the Board of Equalization of Taxes, and that board determined the true value thereof to be $747,820. The local assessors, in the year 1907, assessed this lot at $1,450,000, and the State Board of Equalization of Taxes determined the true value, as it did in the previous year, to be $747,820.

For the years 1899 to 1904, both inclusive, the local assessors assessed lot 22, block 2154, at $1,603,000. Against these assessments.

for the years 1900, 1901 and 1902, the complainant appealed to the State Board of Taxation, which confirmed them.    In 1903 complainant appealed, and again in 1905 it appealed, but the board failed to act on either appeal.    In both years the assessment on this lot was $1,803,000.    In 1906 the assessment was $2,390,000.    Upon an appeal to the State Board of Equalization of Taxes this latter assessment was reduced to $1,603,000.    In 1907, the local assessment on this lot was $3,720,000, and on appeal this assessment was reduced by the Board of Equalization of Taxes to $1,743,000.    The increase of $143,000 over the amount fixed by the State Board as the true value of the property for the preceding year was due to the fact that part of the lands assessed lying under water had been filled in and reclaimed by the complainant.

As the fundamental right of the city to tax these properties at all was involved in the litigation then pending, by common consent of the parties, nothing was done toward the enforcement of the payment of these taxes until after the decision of the United States Supreme Court.    The city then took the matter up and advertised the properties for sale for the arrears of taxes.    It was to restrain these sales that the bill in this case was filed.

The bill charges and the complainant offered proof to show that the assessors of Jersey City, in the year 1899 and the subsequent years to and including 1906, "designedly, intentionally, habitually and systematically" undervalued the property of individuals in said city for the purposes of taxation and over-valued the property of the complainant, whereby there was during the said period "designedly, intentionally, habitually and systematically" levied by the authorities of the said City upon and against the complainant's said lands, taxes largely in excess of those assessed and levied upon the property of individual owners in said taxing district contributing to the same common burden of taxation.

The bill further charges that the complainant has exhausted all remedies afforded by the laws of the state of New Jersey, not only in respect of the correction of the said valuations and assessments of said lands for taxes, but also in respect of the enforcement thereof; that it has no adequate remedy at law to correct the said valuations and assessments and said taxes, or to prevent the enforcement thereof; and that it has no adequate remedy at law to recover the said taxes in case it pays them in order to prevent the sale of said property, as the Legislature of the state of New Jersey has not provided any legal remedy in such cases.

After the filing of the bill, upon a rule to show cause, a preliminary injunction was issued, enjoining and restraining the defendants from selling the said properties, or any part thereof, until after the final determination of the cause, or further order by the court.    Defendants having taken no proofs, the case came on to be heard on the allegations of the bill and the evidence adduced in support thereof.    A final decree was entered in favor of the complainant.    From this decree, the present appeal was taken.

Among other things, it was ordered and adjudged by the said final decree, that complainant should not be required to pay taxes to the

defendants upon the properties mentioned in the bill for the years 1899 to 1907, inclusive, upon a basis of valuation in excess of 70 per cent. of the true value of said properties, as fixed and determined for each of said years by the taxing authorities of the state of New Jersey and as then fixed and determined by the court.

"That the complainant should also be required to pay interest on the whole amount of said taxes (excluding six acres) at the rate of six per centum per annum on said reduced valuation, from the dates that taxes unpaid upon similar properties in Jersey City were due and demandable in such years, respectively."

The total taxes calculated on the above basis upon the properties described in the bill of complaint, amount to the sum of $374,602.01.

"That upon making the aforesaid payments, or the due and legal tender thereof, the remainder of the taxes assessed by the defendants * * * upon the properties aforesaid, for the years aforesaid, shall be canceled of record by the defendants upon the tax duplicates and other books of said city. And that said defendants, their agents," etc., are "perpetually enjoined from collecting, or attempting to collect, any of said excess of taxes."

The points made by the appellants in the specifications of error are:

First: That there was no evidence to support the finding of fact by the court below, that in assessing the lands in question, there had been discrimination intentionally practiced between the assessments made upon complainant's property and that of other owners in said city, or that the taxes so levied were greater in proportion than taxes contributed by other taxpayers therein.

Second: That the grievances set up in the bill of complaint were fully cognizable before and subject to adequate correction by the established special tribunals and common-law courts of the state of New Jersey, and having been submitted thereto and settled adversely to the complainant, are now res judicata.

Third: That for its alleged grievances, the complainant had an adequate legal remedy.

Fourth: That complainant was guilty of laches.

Fifth: That the court was without jurisdiction.

After a careful examination of the evidence disclosed in the record, we have no difficulty in approving the findings of fact made by the court below in its decree, to the effect that for the years 1899 to 1907, inclusive, the taxing authorities of the city of Jersey City assessed the property of the complainant described in the bill of complaint, at or about its true value, and during the same period designedly, intentionally, habitually and systematically assessed all other property in said city, except railroad property, at seventy per centum or less of its true value, and thereby intentionally, habitually and systematically discriminated against the said property of the complainant, to the extent at least of thirty per centum of its true value. Apart from the presumption in favor of a finding of fact by the court of first instance, we are independently of opinion that the evidence abundantly sustains this finding.

[1, 2] As to the second point, it is true that, as to the taxes assessed for 1899, the complainant appealed to the State Board of Taxation of New Jersey, a tribunal which had power to review and ascertain the

true value of all property assessed for taxation throughout the state; that the State Board confirmed the assessment for that year, made by the local assessors; and that on the application of complainant, a writ of certiorari was issued by the Supreme Court of New Jersey, and the legality of the said assessment was reviewed on the single point raised by the complainant, that the defendant corporation had no jurisdiction for the purpose of taxation upon lands of the complainant lying between the middle of the Hudson river or New York Bay and the low-water line on the New Jersey shore.

This question of jurisdiction was decided in favor of the defendants by the Supreme Court, whose judgment was afterwards affirmed by the Court of Errors and Appeals, and the question was finally settled by the Supreme Court of the United States, upon the appeal of the complainant, by a judgment affirming the jurisdiction of the defendants in the premises. See 209 U. S. 473, 28 Sup. Ct. 592, 52 L. Ed. 896. Notwithstanding the pendency of this litigation on the question of jurisdiction over the assessments of 1899 down to the final adjudication of the United States Supreme Court in 1908, the taxes were levied for each year of that period down to and including 1907, and appeals were taken by the complainant to the State Board of Taxation and the State Board of Equalization of Taxes, which succeeded it, and the assessments of the legal assessors were by said boards reduced to amounts adjudged by said boards to be the true value of said properties of complainant, in accordance with the command of the law of New Jersey, requiring all assessments of property for the purpose of taxation to be made at the true value thereof. It is also true that the assessments thus made by these several boards, of the properties at what was considered by them their true value, are final and binding upon the complainant, as a determination of the actual value of the properties so assessed. The gravamen of the complaint, however, as set forth in the bill, is not as to the values determined by these boards for the purpose of assessment, but that, in spite of such determination, the local assessors have intentionally and systematically assessed all other property within the jurisdiction of the defendant upon a basis of 70 per cent. or less of its true value, and thus imposed upon complainant an undue and unjust share of the common burden of taxation.

As found by the court below, complainant's attempt to have this inequality corrected, by requiring all other properties to be assessed at their true value, instead of at 70 per cent. thereof, was futile, because neither the state boards nor the common-law courts of the state had power to raise such assessments from 70 per cent. or less of true value to 100 per cent. thereof, unless all of the 165,000 or more owners of such properties were made parties, collectively or individually, in separate bills to any proceeding for that purpose before either the state boards or the courts. Not only was the futility of such an attempt apparent, but we are of opinion that, as neither of the state boards nor the common-law courts had power to give such relief upon the simple appeal of the complainant, "the grievances set up in the bill of complaint were not fully cognizable before and subject to adequate correction by the established special tribunals and the common-law courts

of the state of New Jersey," and the doctrine of res judicata is therefore not applicable to the situation, as contended by the appellant.

From what has been said, it must be apparent that appellant's third point, viz., "that for its alleged grievances the complainant had an adequate legal remedy," cannot be sustained. As we have already said, complainant appealed to the special tribunals above referred to, on the ground that its properties had been assessed to an amount beyond their true value. These assessments were from time to time, in the years included within the period 1899–1907, reduced by the boards appealed to, to an amount determined by said boards to be the true value of such properties. This reduction and fixation of true value, the boards were authorized to make. They had no authority, however, to equalize taxes, by raising the assessments of all the other property in the city from 70 per cent. of true value to full value. From what has been already said, it seems obvious that no *adequate* remedy at law for the grievances mentioned in the bill of complaint was afforded by an appeal to the State Board of Equalization of Taxes; and, as pointed out by the learned judge of the court below, suits for the recovery of such taxes, if paid under protest, would have to be brought against the state, city, and county, to whom they would have been distributed by the collector, thus bringing about a vexatious and unnecessary multiplicity of suits.

[3] As to the fourth point above referred to, we do not find that defendants' charge, that the complainant was guilty of laches in bringing the present suit, is justified by the facts appearing of record. It appears that, after the assessment of 1899, complainant was advised that the lands, so far as they lay under the waters of the Hudson river, were not within the jurisdiction of the defendant corporation or of the state of New Jersey. It accordingly applied, as hereinbefore stated, to the New Jersey Supreme Court for a writ of certiorari, to review said assessments. The writ being allowed, the New Jersey Supreme Court sustained the authority of the city to tax this property. On a writ of error, the Court of Errors and Appeals of that state affirmed the judgment of the Supreme Court, and upon a writ of error sued out of the United States Supreme Court, the judgment of the New Jersey Court of Errors and Appeals was affirmed in June, 1908. Though subsequently to 1899 the defendant corporation annually assessed taxes against these properties, by common consent of the parties nothing was done toward the collection or enforcement of the payment of these taxes until after the decision of the United States Supreme Court. The city then took the matter up and advertised the properties for sale for the arrears of taxes, and it was to restrain these sales that the bill in this case was filed.

[4, 5] Having decided that complainant had no adequate remedy at law for the grievances complained of, and that the Court of Chancery of the state of New Jersey would have had equitable jurisdiction of the bill filed in this cause, we have no difficulty in deciding, as to the fifth point, that the court below properly exercised its equitable jurisdiction in entertaining complainant's suit, on the ground that it involved a determination of the question, whether the acts complained of were in violation of the fourteenth amendment of the Constitu-

tion of the United States. We take it to be well settled, that the inhibition of this amendment, which forbids any state to deprive any person of life, liberty or property without due process of law, or to deny any person within its jurisdiction the equal protection of its laws, is not confined to state action, as expressed by its legislative department, but applies also to such conduct of the responsible ministerial agents of the state as accomplishes what is denounced by the amendment. In other words, a state may do the things prohibited by the constitutional amendment by other means than by legislative enactment.

We think, therefore, the learned judge of the court below was right in deciding that the time which had elapsed between the issuing of the mandate out of the United States Supreme Court, formally ending the litigation concerning the right to tax at all, and the filing of the bill in this cause (about seven months), in view of the then pending negotiations between complainant and the said authorities to effect an adjustment of such taxes, did not constitute laches.

Extended discussion as to these points is rendered unnecessary, in view of the well-considered opinion of the learned judge of the court below. 199 Fed. 237. We therefore content ourselves with the announcement of the conclusions above stated, and hereby affirm the decree that has been entered in this cause.