## MAYOR AND ALDERMEN OF JERSEY CITY et al. v. NEW YORK BAY R. CO. et al.

(Circuit Court of Appeals, Third Circuit, June 23, 1926.)

No. 3441.

1. **Taxation ⟨⟩608(5)—Injunction Is proper remedy, where property of taxpayer is discriminated against by intentional systematic undervaluation of other taxable property of same class, though clear showing of intentional discrimination is required.**

When a discrimination against a person's property exits by reason of intentional systematic undervaluation of other taxable property of the same class, and the property taxed about to be taken for nonpayment of taxes, the remedy is by suit in equity, though clear and affirmative showing of intentional discrimination is required.

2. **Taxation ⟨⟩611(6).**

Fact findings by commissioners of adjustment appointed under Act N. J. March 30, 1886 (P. L. p. 149), and by state board of equalization, held not evidence of property values in suit to restrain collection of taxes as assessed in violation of Const. U. S. Amend. 14.

3. **Taxation ⟨⟩348.**

Court's ruling that uncompleted fill of submarine land was not an improvement increasing the value of the land subject to taxation held not erroneous.

4. **Taxation ⟨⟩348.**

Ordinarily, cost of construction and reproduction is an element in ascertaining the market value of land as respects taxation.

5. **Taxation ⟨⟩528—Complainants In suit to restrain collection of taxes on property discriminated against held liable for only regular interest rate on amount found to be due.**

Complainants, in suit to restrain collection of taxes on property intentionally discriminated against, held chargeable only with regular interest rate on amount found to be due, rather than higher rate imposed as penalty, where delay was chargeable to taxing authorities.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine and John Rellstab, Judges.

Suit by the New York Bay Railroad Company and another against the Mayor and Aldermen of Jersey City and another. Decree for complainants, and defendants appeal. Affirmed.

Edward P. Stout, of Jersey City, N. J., for appellants.

Albert C. Wall, of Jersey City, N. J., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and GIBSON, District Judge.

WOOLLEY, Circuit Judge. This case, on the law, is ruled by Mayor and Aldermen of Jersey City et al. v. Central Railroad Co. of New Jersey, 212 F. 76, 128 C. C. A. 532; affirming (D. C.) 199 F. 237. The complainants, one a railroad corporation of the State of New Jersey, lessor, and the other a railroad corporation of the State of Pennsylvania, lessee, filed their bill against the respondents, a municipal corporation of the State of New Jersey and its city solicitor, to restrain the collection of taxes which, they alleged, the respondent municipality had assessed against their property so unfairly and inequitably as to violate the provisions of the Fourteenth Amendment to the Constitution of the United States. The gravamen of the complaint as set forth in the bill is that local assessors, for purposes of taxation, designedly, intentionally, habitually and systematically undervalued properties of others at rates from 45 per cent. to 70 per cent. of their true value, and with like design, intention and habit overvalued the property of the complainants at rates varying from 150 per cent. to 900 per cent. of its true value, and by this unjust discrimination imposed upon the complainants an undue share of the common burden of taxation.

[1] The law for the redress of such a wrong is settled. It is that, when there is unjust discrimination against a person's property in that there is an intentional, systematic undervaluation of other taxable property of the same class, and the property of the taxable suffering from this discrimination is about to be taken for nonpayment of taxes, the remedy is by injunction in equity to prevent the taxation of his property at any higher rate than that imposed upon the property of those in whose favor the discrimination exists. Cummings v. National Bank, 101 U. S. 153, 160, 25 L. Ed. 903; Greene v. Louisville & Interurban R. Co., 244 U. S. 499, 516, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. 'Cas. 1917E, 88; Taylor v. Louisville & Nashville R. Co., 88 F. 350, 31 C. C. A. 537; Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 445, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 352, 38 S. Ct. 495, 62 L. Ed. 1154. "It is not enough, in these cases, that the taxing officials have merely made a mistake. It is not enough that the court, if its judgment were properly invoked, would reach a different conclusion as to the taxes imposed. There must be clear and affirmative showing that the difference is an intentional discrimination and one adopted as a practice." Chicago G. W. Ry. Co. v. Kendall, 266 U. S. 94, 98, 45 S.

Ct. 55, 57, 69 L. Ed. 183; Cummings v. Bank, 101 U. S. 153, 25 L. Ed. 903; Sioux City Bridge Co. v. Dakota County, Nebraska, 260 U. S. 441, 448, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979; Southern Ry. Co. v. Watts, 260 U. S. 519, 526, 43 S. Ct. 192, 67 L. Ed. 375; A. T. & St. F. Ry. Co. v. Sullivan, 173 F. 456, 97 C. C. A. 1; Mayor and Aldermen of Jersey City et al. v. Central Railroad Co. of New Jersey, 212 F. 76, 128 C. C. A. 532.

As the respondents have not questioned this law and as the complainants have, by their pleadings, brought themselves within its terms, the case is resolved into one purely of fact. As raised by the bill, the issues of fact concern, first, the complainants' charge of the corporate respondent's intentional and systematic undervaluation of other peoples' property, about which there is no dispute— the respondents admit it; and next, their charge of a like intentional and systematic overvaluation of the complainants' property, about which there is sharp conflict. The only point of agreement between the parties is the genesis of the transaction. This was the purchase in 1889, by Young, of 515.51 acres of land—66.51 acres upland and the rest under water—located in the Greenville section of Jersey City, New Jersey, on both sides of the Morris Canal, for $661,309.50. Of this sum $109,296.50 was money expended for riparian grants. Therefore the rate paid per acre, as the cost of these grants is excluded or included, was either $1,200 or $1,358. In the same year Young sold the property to the New Jersey Warehouse & Guaranty Company for about the same figure. From 1889 to 1905 that corporation sold various parcels of the tract for an average consideration of $1,007 per acre and in 1909 another parcel for $3,-800 per acre, the highest price obtained. In 1905 it sold 471.5 acres lying east of the canal to the lessor complainant, subject to the taxes assessed thereon from the year 1892. Originally, of this acreage all but 22.5 acres was under water and extended out one mile to the bulkhead line in the New York Bay where the water was about 7 feet deep. To make the property useful for any purpose and particularly for railroad purposes, it had to be filled in and a channel dug to deep water. This the Warehouse Company began in 1900 and completed in 1904 at a cost of about $3,-896,583, when yard tracks were laid to the bulkhead line. Disputes between the owners of the land and the respondent municipality in respect to taxes promptly arose and persisted through the tax years 1892 to 1908, both inclusive, the period here in controversy. The taxes which the municipality claimed

for the years 1892 to 1908, inclusive, amount to $252,223.85. The complainants claimed that for the years 1900 to 1908, inclusive, the property should have been assessed at its true value of $1,200 per acre. The respondent's revised rate for that period varied from $2,018 to $15,900 per acre. In 1907 the State Board of Equalization of Taxes assessed the improved portions of the property at $5,317 per acre. The court found the discrimination charged in the bill; placed the figure of $1,200 per acre as the highest valuation of the complainants' land for any year in question; entered a decree requiring the complainants to pay, as a balance due, the sum of $3,505.19, with interest at 6 per cent. on a certain part thereof (pursuant to an arrangement by which the complainants paid $168,779.81, the largest part of the taxes), and perpetually enjoining the respondents, on receiving payment of the sum named in the decree, from collecting taxes in an amount exceeding that allowed. It is from that decree the respondents have taken this appeal. Is the decree sustained by valid evidence?

The court admitted in evidence the report of Commissioners of Adjustment appointed under chapter 112 of the New Jersey Laws of 1886, known as the Martin Act, who readjusted the taxes on the property from 1892 to 1907, inclusive, at $147,662.11, which, with $21,117.70 interest, is the sum, as we have just stated, the complainants paid. This readjustment, however, was held illegal by New Jersey courts because of the Commissioners' lack of authority to deal with taxes levied after April 14, 1891, the date of the supplement to the Martin Act (P. L. 1891, p. 393), under which the adjustment was made. The first taxes in question were for the year 1892.

[2] The trial court also admitted in evidence the determination of the State Board of Equalization of Taxes that for the year 1909 land, like in kind and similarly located, was worth $1,200 per acre, and made the deduction that during the preceding years the land in question was of no higher value. We sustain the respondent's contention that the fact findings of these official bodies are not evidence of property values, though based as they were on the peculiar knowledge of the experienced men composing them. Flint v. Flint, 88 Mass. 34; People v. Zundel, 157 N. Y. 513, 52 N. E. 570. Having admitted the testimony, we can understand the difficulty which the trial judge may have had in closing his eyes to what was before him, especially in view of its persuasive character. Though this evidence was not validly admitted, it is far from clear that the judge ground-

ed his decision on it. Indeed, the contrary appears, as is indicated by his reference to these official findings and his immediate reference to the additional testimony and his concluding statement that "all of the evidence when weighed conclusively points to the support of the complainants' allegations." We must therefore inquire whether the rest of the evidence, properly admitted, sustains the decree.

This we have done—with much labor. The remaining evidence embraces sales, leases, rentals and riparian grants of properties as nearly similar in character and situation as the problem admitted, and also the testimony of experts for both parties. Were we to recite the evidence at length in this opinion and show just how we accepted, weighed, reconciled and rejected its various parts, nothing would be added to the decision. It will be enough to say that apart from the presumption in favor of a finding of fact by the court of first instance, we are independently of opinion that, laying aside the evidence improperly admitted, the remaining evidence, properly admitted, sustains the finding of discrimination on which the decree was founded. [3, 4] Moreover, we have not been persuaded that error was involved in the trial court's ruling that fills made on the property between 1900 and 1904 were not improvements and therefore did not increase the value of the land until completed. True, cost of construction and of reproduction is, ordinarily, an element in ascertaining the market value of land, but whether an incompleted fill, representing merely so many thousand cubic yards of dirt dumped on land still overflowed by water, is an improvement capable of valuation and therefore a subject of taxation was not demonstrated to the trial judge nor has it been to us.

[5] The question that has given us longest pause concerns a relatively small matter of interest. The respondent municipality maintains that it is entitled to the statutory rate of interest at 10 per cent. per annum upon taxes for the years prior to 1903 and 7 per cent. for the years thereafter. The complainants contend that the payment they made in 1910 was in full settlement, or, if not in full settlement, then the amount due cannot exceed $3,505.19, representing an interest concession at a 6 per cent. rate. On the complainants' conceded freedom from laches and on their willingness, frequently expressed, to pay such taxes as were due on a basis of 70 per cent. of the true value of their property, or, at least, to pay the amount which the Martin Act Com-

missioners had determined, the court allowed interest at the rate of 6 per cent. The delay is without doubt chargeable to the respondents. This case, in the circumstances, is not one of taxes in arrear for which the New Jersey law imposes the penalty of a high rate of interest. It is a case disclosing a situation purely litigious and calling only for interest at the regular rate.

The decree below is affirmed.