THE STATE, THE MAYOR AND ALDERMEN OF JERSEY CITY, PROSECUTOR, v. BOARD OF EQUALIZATION OF TAXES OF NEW JERSEY, AND THE NEW YORK AND JERSEY RAILROAD COMPANY, AND THE HOBOKEN AND MANHATTAN RAILROAD COMPANY.

Submitted December 11, 1906—Decided February 25, 1907.

1. The board of equalization of taxes of New Jersey created by the act of 1905 (*Pamph. L., p.* 123) is invested with jurisdiction to determine whether railroad property is assessable by the local assessors as property not used for railroad purposes.
2. Property owned by a railroad which is with reasonable diligence being put into a shape to be used for transportation purposes, with the intention to so employ it as soon as the property is fit for such use, is assessable alone by the state board of assessors.

On *certiorari*.

This writ brings up an order of the board of equalization of taxes of New Jersey. The board of tax assessors of Jersey City levied an assessment of taxes for the year 1905 upon the property of the New York and Jersey Railroad Company. The property is described in the assessment as "Hudson river block 19," and as being the "right, title and interest or easement in the land on and beneath the surface occupied by twin tunnels with shafts beginning at a point about one thousand and thirty-five feet east of the easterly line of Provost street and twenty-five feet north of the northerly line of Fifteenth street produced, and extending thence south, eighty-seven degrees east, or nearly so, three thousand three hundred feet, to the easterly boundary of Jersey City, with machinery and equipment as constructed."

This property was valued at $815,000. This assessment was taken by appeal to the board of equalization of taxes of New Jersey. That board ordered that the assessment of $815,000 should be reduced to $43,000, and ordered that the state board of assessors should make an assessment of such of the property as was used for railroad purposes. It may be

remarked that the $43,000 retained was for personal property, consisting of hydraulic pumps, tools, derricks, tanks, &c.

This order is brought into this court by the present writ, and the matter is heard here upon a stipulation as to the facts entered into by the respective counsel. The substantial parts of the stipulation are these: "The property assessed, except some personal property already mentioned, is a part of a located route of the Hudson Tunnel Railroad Company, incorporated under the General Railroad law of New Jersey in the year 1873. Said company acquired that part of its route from the Morris and Essex Railroad Company by condemnation, and was subsequently consolidated with a similar company in New York. The consolidated company partially constructed tunnels on the said located route prior to the year 1884. The property and franchises of said company were afterwards sold under foreclosure decree in the Court of Chancery of the State of New Jersey and like decree in the State of New York, and were conveyed through a mesne purchaser to the New York and Jersey Railroad Company, a railroad corporation of the State of New York, which corporation, on and prior to' January 1st, 1905, was the owner thereof, and also of the right of way for a tunnel railroad in continuation thereof to a point on the east side of the Hudson river, in the city and State of New York, and beyond the same up to a terminal station at the corner of Greenwich and Christopher streets, in said city, and subsequently obtained the right of way for an extension beyond said terminal station up Sixth avenue, in said city.

The route of the main stem of the Hoboken and Manhattan Railroad Company, incorporated under the General Railroad law of the State of New Jersey, was, prior to the date last named, located, with the consent of the New York and Jersey Railroad Company, upon said filed route in the State of New Jersey.

Prior to January 1st, 1905, two tunnels were completed on said filed route and across the Hudson river and up to said terminal station at the corner of Greenwich and Christopher streets. Said tunnels are each constructed by excavating

under the surface of the ground a space of about seventeen feet in diameter and lining the same with a structure of steel and concrete, or of brick, and concreting the roadbed for the use of appellant's railroad. A double temporary construction track was laid thereon, and workmen and materials were being transported to and fro in the prosecution of the construction of the railroads of the said Hoboken and Manhattan Railroad Company in New Jersey and of the Sixth avenue extension of the said the New York and Jersey Railroad Company in New York. Otherwise the said property has not been and is not being used for either the transportation of freight or passengers.

Since the enactment of the statute for the taxation of railroad and canal property in 1884, down to the year 1905, no local tax has been assessed against said real estate by the mayor and aldermen of Jersey City.

Ever since the enactment of said statute for the taxation of railroad and canal property, down to and including the year 1905, block 19 on the Jersey City map has been assessed by the state board of assessors to the Morris and Essex Railroad Company (Delaware, Lackawanna and Western Railroad Company, lessee) as property used for railroad purposes outside of the main stem, and no express exception therefrom has ever been made in the assessment. As to the land under water, the facts are similar to those passed on in *Jersey City v. State Board of Assessors,* 44 *Vroom* 164.

Neither appellant has ever made any return to the state board of assessors, nor has any assessment ever been made against either of them by said board.

Before Justices FORT, PITNEY and REED.

For the prosecutor, *Robert Carey* and *George L. Record.*

For the state, *Robert H. McCarter,* attorney-general.

For the defendant railroad company, *Collins & Corbin.*

The opinion of the court was delivered by

REED, J.   Jersey City, the prosecutor, first challenges the jurisdiction of the board of equalization of taxes to make the order in question.   The point of attack seems to be that the power of the board is confined to raising or decreasing the amount of tax levied upon property, but does not include the power to impose an assessment upon property not already assessed, or to relieve assessed property entirely from assessment.

To state the insistence in the language of the counsel's brief, "There is no authority vested in the board to pass upon the question whether or not property is taxable by the state board of assessors as distinguished from the local authorities.   This of course involves the question whether the board can determine whether property is by law taxable or non-taxable."

The above contention is rested upon the language of the act creating the board.   This act, passed in 1905 (*Pamph. L., p.* 123), is entitled "An act to create a board for the equalization, revision, review and enforcement of taxes."   The fifth section of the statute provides that "Where complaint shall be made to said board in writing, verified by the oath of any complainant, following the assessment of property of any kind, whether belonging to individuals, corporations, railroads or canals, said board shall have power to review and correct the action of the local assessors or other taxing officers, and of all boards of tax review, by reducing or increasing such assessment."

The power thus conferred, it is perceived, is to review or correct the action of the assessor or other taxing officer or board of review, by reducing or increasing such assessment on the application of the property owner.

In section 3 the board is equipped with authority, upon complaint of any taxing district, to examine as to any property omitted from assessment, and to add to the ratables of such taxing district.   It also provides that the owner shall be notified of the purpose of the board and the opportunity offered him of showing cause why the change should not be

made. This section confers upon the board the power to pass upon the taxability of property. Indeed, the general authority to review and correct by reducing or increasing carries with it the power to determine whether property is liable to assessment. The judgment of the board is substituted for that of the assessor or the inferior boards of review.

The assessor must pass upon the question of what property is subject to levy and what property is non-assessable; he must pass upon and construe not only the section of the act providing for taxation, but those sections providing for exemption; he has to determine what constitutes securities of the United States; what constitutes bonds of the state, county taxing and school districts. He must pass upon the question upon what personal property taxes have been paid within three months preceding the first of May, in another jurisdiction. He must decide what properties of the state, county, school districts are used for public purposes; what property or portion of property is actually or exclusively used for colleges, schools, academies and seminaries, and not conducted for profit. He must determine how much land is necessary for the full use and enjoyment of various buildings, and he must determine what constitutes charitable institutions.

It would be strange indeed if a reviewing body, with the authority and scope which the board of equalization undoubtedly possesses to determine whether the numerous kinds of property claiming exemption by reason of their use, should not also have the ability to determine whether property is used for railroad purposes, when that purpose lies at the foundation of the method by which such property shall be taxed. I conclude that the board has the jurisdiction which in this instance it exercised.

The next question is whether the property, the taxes upon which were removed, was exempt from local assessment. The Tax act of 1903 (*Pamph. L., p. 396, § 4, pl.* 8) classes among property exempt from local taxation all property used for railroad and canal purposes, the taxation of which is provided for by any other law of this state.

The act for taxation of railroad and canal property (*Gen.*

*Stat., p.* 3324, § 1, *pl.* 212) enacts that all property of any railroad or canal company not used for railroad or canal purposes shall be assessed for taxes by the same assessors in the same manner and at the same rate as the taxable property of other owners in the same municipal division or tax district.

The question, then, is whether this tunnel property is to be taxed by the state board of assessors or by the local assessors.

The solution of this question depends upon whether, within the meaning of the statute, this property can be said to be used for railroad purposes.

From the stipulated facts it appears that the property was, with reasonable diligence, being put into a shape suitable for transportation purposes for the railroad, with the intention to employ it for that purpose as soon as it assumed a usable shape. The property was in the possession of the railroad company, who were using it for that purpose alone. It is true that the company was not yet transporting passengers or freight as a common carrier. The actual transportation of freight and passengers, however, is not the only use to which railroad property is devoted. The use of the property for preparation for railroad use and for the reparation incident to transportation is as much a use for railroad purposes as is transportation itself. Some physical convulsion like an earthquake might paralyze traffic for weeks, yet no one, I imagine, would say that during this period of time while the company was rebuilding bridges or restoring roadbeds the property was used for any other than railroad purposes.

In the present case the property taxed was used by the railroad. It was used for some purpose. What purpose for using it other than railroad purposes can be attributed to the company? The notion that the exemption of such property from local assessment rests alone upon the fact that over it cars are running, or that it is devoted to actual present use for transportation purposes, is not recognized by our cases.

In *United New Jersey Railroad and Canal Co.* v. *Jersey City*, 26 *Vroom* 129, the land assessed locally had not, at the time of the assessment, been employed in the operation of the

road.  In was, in the language of the Chancellor who delivered the opinion in the Court of Errors and Appeals, held vacant in anticipation of demand for increased trackage and other structures incident to the operation of a branch road, and for use in the process of construction of elevated tracks, and for any other purpose.  It was not running or otherwise used for profit.  This property was held -to be exempt.  The court further defined the line which separated taxable from non-taxable property by saying that when property with a right of way not used for purposes incident to the proper construction, maintenance or management of the railroad, or to the use of it by the corporation as a carrier of goods or passengers, it cannot be said to be used for railroad purposes:

In *New Jersey Junction Railroad* v. *Jersey City,* 34 *Vroom* 120, a ten-acre block adjoining a right of way, with no improvements upon it, and from which the railroad company derived no revenue, and not used for any purpose other than railroad purposes, was held to be exempt because held in anticipation of use for railroad purposes.  It is true there was a railroad in operation in each of these cases upon adjacent property, but that fact seems to have been significant only in exhibiting an intention to use the taxed property, when needed, as part of the existing railroad.  The property actually taxed was no more in actual use for transportation purposes than the property taxed in the present instance, but an intention appearing that the property should be devoted to railway purposes alone, it was held exempt from local assessment.

The same intention here appearing, I think the board of equalization were right in relieving the property from the tax imposed.

It may be remarked that the fact that the company had not returned the property to the state board of assessors for assessment cannot affect the question under discussion.

There should be an affirmation of the order of the board.