[Civ. No. 6489. Third Dist.—May 22, 1941.]

ANDREW II. NOCE, Appellant, v. DEPARTMENT OF FINANCE OF THE STATE OF CALIFORNIA et al., Respondents.

[Civ. No. 6494. Third Dist.—May 22, 1941.]

F. P. SLATER, Respondent, v. GEORGE H. MOORE, as Superintendent of State Printing, et al., Appellants.

6

Albert E. Sheets and Anthony J. Kennedy for Appellant in Civ. No. 6489.

Earl Warren, Attorney General, and Wilmer W. Morse, Deputy Attorney General, for Appellants in Civ. No. 6494, and for Respondents in Civ. No. 6489.

Robert A. Zarick and Thomas O'Hara for Respondent in Civ. No. 6494.

THE COURT.—The above-entitled actions were consolidated for trial. The Noce case is a petition for a writ of *mandamus* by an employee in the Bureau of Printing of the State of California, who has acquired the status of a permanent pressman in the classification of ''Platen Pressmen''. His application for the writ is made under the provisions of section 157 of the Civil Service Act (Stats. 1937, p. 2085, 1 Deering's Gen. Laws of 1937, p. 742, Act 1404), to require the officers of the Personnel Board and the Department of Finance to permit him to qualify himself to hold the office and perform the services required of a separate classification in operating a Harris Offset Press, and to pay his wages during the period of training, in the sum of $99. The Slater case is an application by the president of the Amalgamated Lithographers of America to enjoin the same state officers from assigning to Mr. Noce a position with civil service status in a different classification of occupations from that which he holds, without first ascertaining his qualifications and fitness *by competitive examination,* as required by article XXIV of the Constitution, and from paying to him the wages he claims during the period of his training. Findings were adopted and separate judgments were rendered against Mr. Noce in the two proceedings. The writ of mandate was denied in the Noce case, and the injunction was directed to issue as prayed for in the Slater proceeding. The trial court held that section 157 of the Civil Service Act is in conflict with the spirit of article XXIV of the Constitution and therefore void. From those judgments these appeals were perfected. Both cases are founded on the construction and application of section 157 of the Civil Service Act. Upon stipulation the appeals are presented on one transcript of evidence. There is substantially no dispute regarding the facts of these cases. Both appeals will be determined by our conclusions in the application of Andrew H. Noce for a writ of *mandamus.*

Mr. Noce has been employed in the State Printing Bureau since February, 1930, as a permanent civil service pressman engaged in operating platen, vertical, high-speed or cylinder presses, commonly known as ''flatbed'' or ''letter presses'',

as distinguished from lithographic offset presses. The position which he occupies was classified by the Personnel Board as "Platen Pressmen". The qualifications and duties of a platen pressman were prescribed by the board. From time to time, since 1935, several lithographic offset presses have been installed and used in the printing bureau. These lithographic machines have gradually superseded, to a considerable extent, the older type of cylinder presses. Both are designed to accomplish the same purpose, namely, the production of printed matter. The lithographic presses perform the work much more rapidly than the cylinder machines. It is conceded the methods of operating the two machines, and the qualifications and training required to do so, are essentially different; that the operator of a platen press is not qualified to handle a lithograph offset machine without additional special training and experience. The Personnel Board classified the position of operating the new machines as "Lithographic Offset Pressmen". The board also prescribed the qualifications and duties of the last-mentioned employees. Among the requirements qualifying operators of either of these types of machines under civil service is that they should have served at least two years as journeymen thereon. The maximum salary fixed by the board is slightly higher as a lithographic press operator. Transfers from one classification to the other without competitive examinations have not been made because of the essential differences in the character of the machines and the skill and training necessary to operate them. In March, 1939, at the request of the petitioner Noce, the superintendent of the State Printing Bureau directed that he be given instructions for the operating of lithographic presses pursuant to the provisions of section 157 of the Civil Service Act with the purpose of qualifying him and to automatically transfer him to that class of work. Mr. Noce began that course of training. Mr. Slater then commenced the action for injunction. Both suits were filed about the same time, and they were consolidated for trial. Both proceedings were determined against the petitioner Noce as we have previously stated.

We are persuaded section 157 of the Civil Service Act may not be construed, under the circumstances of these cases, to authorize the appointment or transfer of the petitioner Noce from his classification as platen pressman to that of litho-

graphic offset pressman without the competitive examination required by article XXIV of the Constitution. Section 157 of the Civil Service Act provides:

"Whenever any machine used by any department, board, division, institution, commission, elective office or other State agency for the purpose of printing, off-set printing, manufacture, maintenance, construction or office work is replaced, supplemented, or partially replaced or partially supplemented by new and/or different and/or additional machines and the purpose or product of such displacing or supplementing machine is for printing, off-set printing, maintenance, construction or office work or the purpose or product is of same, similar or analogous nature or a similar or an analogous result is accomplished by such displacing or supplementing machine the permanent civil service employee or employees operating such displaced or supplemented machine and who have operated the same for a period of four years must be given the position of operating said new or different or additional machine if such person or persons is then able to operate said machine without prior instruction. In the event that such person or persons is not able to operate said displacing or supplementing machine without prior instruction, each such person or persons must be given the continuous opportunity for a period of three months to learn to operate said displacing or supplementing machine; that during said period of three months such person or persons shall be paid wages or salary at the same rate as paid to such person or persons for the operation of said displaced or supplemented machine during a period of one year immediately prior to such displacement or supplement.

"If, upon the expiration of said period of three months, or at any sooner time, said employee or employees believes he can operate said machine he shall continue to operate said machine, retaining the same position and seniority as he possessed in the operation of the displaced or supplemented machine, and such employee or employees can only be removed from said position as provided by section 173; at all times the position of such employee or employees shall permit him to operate either the displaced or supplemented machine or the displacing or supplementing machine."

We are not disposed to hold that section 157 of the Civil Service Act is unconstitutional and void. It is true that

when there is a clear conflict between a constitutional provision and a statute the former must prevail. (*Southern Cal. Tel. Co. v. County of Los Angeles,* 212 Cal. 121, 125 [298 Pac. 9]; 5 Cal. Jur. 569, sec. 16.) Every intendment, however, is in favor of the validity of a statute, and it should not be held to be void unless it is clearly repugnant to the Constitution. (*Bourland v. Hildreth,* 26 Cal. 161; *In re Miller,* 162 Cal. 687 [124 Pac. 427]; 5 Cal. Jur. 611, secs. 43–45.) It is unnecessary for us to hold that section 157, *supra,* is unconstitutional and void, for we are of the opinion its provisions have no application to a transfer from one classification to another. Ordinarily a civil service employee may not be transferred from one distinct classification to another without competitive examination. (Civil Service Act, sec. 114; *Pinion v. State Personnel Board,* 29 Cal. App. (2d) 314, 319 [84 Pac. (2d) 185].) The only exception to that rule is when the duties, qualifications, responsibilities and salaries of the different classifications are substantially the same. (Civ. Serv. Act, sec. 144.) We therefore refrain from holding that section 157 is unconstitutional. It may be true that it was intended to apply to the training of a civil service employee having four years of experience in operating machinery in his particular classification of work, when modern machines have replaced the older types, so that he might retain his civil service status in that same classification, and not lose his position. But it certainly cannot apply to the training of an employee so that he may automatically be transferred from one classification to another, which requires different training, qualifications and duties without examination. That would be in direct conflict with the clear language and the very spirit of article XXIV of the Constitution. That would result in giving an employee an entirely new and different job for which he is not qualified, without competitive examination. That application of the statute would exclude from competition for appointment or transfer to the other classes of work requiring different qualifications men who might have had years of experience in operating the new machines, and who are much better qualified to fill the positions. That is the exact result the Constitution sought to prevent. The challenged section appears to deprive the appointing power of the right to determine whether the employee is qualified to operate the new machines, for it de-

clares that *"If,* upon the expiration of said period of three months, or at any sooner time, *said employee or employees believes he can operate said machine he shall continue to operate said machine,* retaining the same position and seniority as he possessed in the operation of the displaced or supplemented machine.'' Article XXIV, section 1, of the Constitution provides that:

"Permanent appointments and promotion in the State civil service shall be made exclusively under a general system based upon merit, efficiency and fitness *as ascertained by competitive examination.''*

Originally the Civil Service Commission was vested with the exclusive authority to classify positions. (Stats. 1913, p. 1035, sec. 5; 1 Deering's Gen. Laws of 1931, pp. 621, 624, Act 1400.) The State Personnel Board now possesses that exclusive province. (Art. XXIV, sec. 5 (c), Const.; Stats. 1935, p. lxxxvi, adopted Nov. 6, 1934.) That section provides that:

"The rules, regulations, classes and grades of positions heretofore lawfully adopted . . . are continued in force and upon the effective date hereof the same shall become the rules, regulations, classes and grades of positions of the board herein created subject to change by said board in the exercise of its powers herein conferred or as may be hereafter provided by law.''

Section 2 (c) of article XXIV of the Constitution specifically excepts from the authority conferred upon the executive officer of the board the right to determine the classifications and grades of officers, which remains the exclusive province of the Personnel Board. It reads:

"The board shall appoint and fix the compensation of an executive officer, who shall be a member of the State civil service but not a member of the board.

"Said executive officer shall perform and discharge all of the powers, duties, purposes, functions and jurisdiction hereunder or which hereafter by law may be vested in the board *except that the adoption of rules and regulations, the creation and adjustment of classifications and grades . . . shall be and remain the duty of the board.''*

Pursuant to that exclusive authority which is vested in the Personnel Board, it fixed and determined the classification

and duties of "lithograph offset pressmen" as distinguished from "platen pressmen", to which latter class the petitioner, Noce, belongs.

The Civil Service Act appears to prohibit the transfer of a civil service employee from one class in which he has attained permanent status to another distinct and duly-adopted class involving substantially different qualifications and duties, except "upon merit, efficiency and fitness as ascertained by competitive examination". Section 114 of the Civil Service Act provides that:

"No person shall be appointed under a class not appropriate to the duties to be performed and *no person shall be assigned to any other class than the one to which his position is to be allotted.*"

Section 144 of the act (Stats. 1939, ch. 898, at p. 2508) provides for certain exceptions to the preceding section, which we assume do not apply to the circumstances of these cases. It reads in part:

"An appointing power may at any time transfer any employee under his jurisdiction from one position to another in the same class or in another class having substantially similar duties, responsibilities, and qualifications and substantially the same salary range. . . .

"A permanent employee may attain eligibility for transfer from a position in one class to a position in another class involving substantially the same level of responsibility and qualification and salary but requiring additional or different special requirements by demonstrating in an examination conducted by the board that he possesses such additional or other special requirements of the class to which the transfer is proposed."

We assume that the section from which we have last quoted has no application to the circumstances of these cases for several reasons. We may not determine as a matter of law that the duties, responsibilities and qualifications required of a platen pressman are substantially the same as those required of a lithograph offset pressman. Evidently the board considered them radically different for it created separate classifications for the two positions. Indeed, it is conceded the qualifications are substantially different. Moreover, the petitioner Noce is not seeking a transfer under section 144 of the act. If he did, he would have to demonstrate his ability and

qualifications to fill the position of lithograph offset press-
man by an examination before the board. He asks to be
automatically transferred under section 157 to that classifica-
tion without examination, competitive or otherwise.

The appellants contend that unless we hold with the trial
court that section 157 of the Civil Service Act is unconstitu-
tional and void it is necessary to reverse the judgments for
lack of findings to the effect that the positions of platen press-
man and lithograph offset pressman do not require substan-
tially the same qualifications and that the Harris offset
presses which replaced the cylinder presses were intended to
produce the same or similar work. We think not. It is ap-
parent that if section 157 does not apply to transfers from one
classification to another where the qualifications and duties
of the employee are essentially different, then the omitted
findings would necessarily be adverse to the petitioner Noce.
■ It has been uniformly held that an appellant is not
prejudiced by a failure to adopt findings which, in support of
the judgment, would necessarily be adverse to him. (*Kramer*
v. *Sanguinetti*, 33 Cal. App. (2d) 303, 312 [91 Pac. (2d)
604].) ■ Out of precaution, however, under the authority
of article VI, section 4¾ of the California Constitution, sec-
tion 956a of the Code of Civil Procedure, and *Tupman* v.
*Haberkern*, 208 Cal. 256, 268 [280 Pac. 970], we shall adopt
the following additional findings, applicable to both cases,
upon what we deem to be substantially undisputed evidence:

"Andrew H. Noce has been a permanent civil service em-
ployee in the State Printing Bureau of California since Feb-
ruary, 1930, and is classified as a 'platen pressman'; for more
than four years he has operated platen cylinder presses in that
bureau; since 1935, some of those presses have been displaced
by lithograph offset presses which accomplish substantially
the same result of producing printed matter for which the
platen presses were used; the qualifications and training
necessary to operate these different types of machines are
essentially different and require additional training, skill,
responsibilities and duties of the employees; the Personnel
Board has formally separated the operators of these two types
of machines in different classifications termed 'platen press-
men' and 'lithograph offset pressmen'."

For the foregoing reasons the judgments are affirmed.

Appellants' petition for a hearing by the Supreme Court was denied July 17, 1941. Gibson, C. J., did not participate therein.